# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER SHANE** | ) | |
| **DREILING, also known as** | ) | |
| **Chris Dreiling,** | ) | |
| **BOP Prisoner No. 16909-003,** | ) | |
| | ) | |
| **Movant,** | ) | **Civil Action No. 1:21-00030-JB-N** |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal Action No. 1:17-00196-JB-N** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Christopher Shane Dreiling, a federal prisoner proceeding without counsel (*pro se*), has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 111)[1] challenging the judgment entered against him in the above-noted criminal action. The motion was referred to the undersigned Magistrate Judge for appropriate action. *See* S.D. Ala. GenLR 72(b); (electronic reference entered 1/15/2021). Under S.D. Ala. GenLR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of these proceedings brought under § 2255, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts

---

[1] All "Doc." citations herein refer to the docket of the above-noted criminal action.

(hereinafter, "the § 2255 Rules"). Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that Grounds One, Three, and Four of Dreiling's motion be **DISMISSED with prejudice** and that Ground Two be **DENIED** on the merits.

## I.    Factual Background and Procedural History[2]

This case arises from an event that occurred in August 2017 on the *Billy B*, a small commercial fishing vessel operating offshore in the Gulf of Mexico. Three men—Noah Gibson (the captain), A.J. Love (a crewmember), and Chris Dreiling (a crewmember)—were onboard the vessel when, with no warning or known provocation, Dreiling attacked Gibson and Love with a knife and forced them into the water. Dreiling later reported that he believed Gibson and Love had been plotting to kill him.

After the attack, Dreiling called the United States Coast Guard to report the incident. Coast Guard officials responded to the scene, rendered medical aid, and transported all three men back to shore. Gibson and Love were injured, but they survived. On August 31, 2017, a federal grand jury indicted Dreiling on two counts of assault within maritime and territorial jurisdiction with the intent to commit murder in violation of 18 U.S.C. § 113(a)(1). (Doc. 13-1).

Before trial, Dreiling's counsel filed a notice of intent to raise an insanity defense, citing Dreiling's documented history of psychological disorders. (Doc. 20).

---

[2] This factual summary is adopted in part from the Eleventh Circuit Court of Appeals decision on Dreiling's direct appeal. *See United States v. Dreiling*, No. 19-12897, 806 F.App'x 888 (11th Cir. 2020).

She also produced a report from Dr. Robert Shaffer, a clinical psychologist, opining that Dreiling was delusional when he attacked Gibson and Love and that his behavior met the standard for a verdict of "not guilty by reason of insanity", but that Dreiling was competent to stand trial. (*See* Doc. 34).

In response, the United States sought a psychiatric or psychological evaluation of their own, a request this Court granted. (Docs. 30, 32). Dreiling was evaluated at the Federal Bureau of Prisons Federal Medical Center in Lexington, Kentucky by Dr. Judith Campbell, and a copy of her evaluation was given to the Court and the parties. (Doc. 47).

This Court held a competency hearing on September 26, 2018. (Doc. 50). After considering the reports from both Dr. Shaffer and Dr. Campbell, the Court found Dreiling competent to stand trial. (Id.)

Dreiling was tried on November 27-30, 2018. (Doc. 77). At trial, Dreiling again raised an insanity defense, and the jury heard testimony from both Dr. Campbell, the government's mental health expert, and Dr. Shaffer, the defense's mental health expert, regarding Dreiling's history of brain injuries and psychological issues, and the potential impact of those issues on his behavior the day he attacked Gibson and Love.

At the close of the government's case-in-chief, outside the presence of the jury, Dreiling orally moved for a judgment of acquittal as to both counts, arguing that the government failed to prove he had the requisite intent to murder Gibson and Love. The Court denied the motion. Dreiling renewed his motion for judgment of acquittal at the close of all the evidence, and the Court denied the motion again. (Doc. 77). The

jury found Dreiling guilty on both counts, and the Court sentenced him to a term of 360 months imprisonment. (Docs. 77, 93, 94).

Dreiling appealed to the Eleventh Circuit Court of Appeals raising only one issue: whether the government had sufficiently proven Dreiling intended to kill Gibson and Love as required to sustain a conviction under 18 U.S.C. § 113(a)(1), or instead whether Dreiling's paranoid delusions that he was acting in self-defense prevented him from forming that requisite intent. (Doc. 116, PAGEID. 1243-1298). The Eleventh Circuit affirmed, finding that, "[v]iewed in the light most favorable to the government," the trial evidence "was sufficient to permit a reasonable factfinder to conclude beyond a reasonable doubt that Dreiling acted with intent to murder Gibson and Love." *See United States v. Dreiling*, 806 F.App'x 888, 891 (11th Cir. 2020).

On January 12, 2021, Dreiling filed the present § 2255 motion, along with a memorandum in support. (Docs. 111, 111-1). On preliminary review of Dreiling's motion pursuant to Rule 4(b) of the § 2255 Rules, the undersigned found dismissal was not plainly warranted, and in an order dated January 19, 2021, instructed the government to file and serve an answer, motion or other appropriate response by March 22, 2021. (Doc. 112). Pursuant to Rule 5(d) of the § 2255 Rules, Dreiling was also given 40 days (from receipt of the government's response) to file any reply. (Id.). The government filed a timely response in opposition to Dreiling's § 2255 motion on March 22, 2021. (Doc. 116). Dreiling did not file a reply, but he did file a motion to

appoint counsel, which this Court denied. (Docs. 117, 118). Dreiling's § 2255 motion now fully briefed and ripe for disposition.

## II.    Legal Standard

Pursuant to 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. This statute permits collateral challenges in four circumstances: (1) the imposed sentence violated the Constitution or laws of the United States, (2) the Court exceeded its jurisdiction to impose the sentence, (3) the imposed sentence exceeded the maximum authorized by law, or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

However, "a collateral challenge, such as a § 2255 motion, may not be a surrogate for direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (citations omitted). Accordingly, "general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id*. (citations and quotations omitted).

This first general rule is commonly known as procedural default (not to be conflated with the procedural bar), which "is neither statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (citing *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003)). The

procedural default rule "applies to all claims, including constitutional claims," and "the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all." *Lynn*, 365 F.3d at 1234-35 (citations omitted). As the Eleventh Circuit recently clarified:

> The terms "procedurally barred" and "procedurally defaulted" have distinct meanings. A procedural bar prevents a defendant from raising arguments in a § 2255 proceeding that he raised and we rejected on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) (collecting cases) ... By contrast, a "procedural default" occurs when a defendant raises a new challenge to his conviction or sentence in a § 2255 motion. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence. *Id*.

*Seabrooks v. United States*, 32 F.4th 1375, 1383-84 (11th Cir. 2022).

Under the "cause and prejudice" exception, a movant may overcome procedural default "by showing cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *McKay*, 657 F.3d at 1196. To show cause, "a defendant must prove that some objective factor external to the defense impeded (sic.) efforts to raise the claim previously." *Lynn*, 365 F.3d at 1235, n. 20 (internal quotations and citation omitted). This cause must also result in "actual prejudice" – that is, it must have "worked to his actual and substantial disadvantage." *Lomelo v. United States*, 891 F.2d 1512, 1515-16 (11th Cir. 1990).

The "actual innocence" exception means exactly what it says. *See McKay*, 657 F.3d at 1196 (citation omitted) (explaining "movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself."). This narrow exception permits a court to allow a defendant to proceed under § 2255 "despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Lynn*, 365 F.3d at 1235-36 (citations and internal quotation omitted). Actual innocence in this context – whether applied to the crime itself or the associated sentence – "means factual innocence, not mere legal insufficiency." *McKay*, 657 F.3d at 1197-98 (citations omitted). With these standards as a guide, the undersigned turns to Dreiling's claims for relief.

## III. Analysis

Before delving into Dreiling's claims, it is helpful to understand that Dreiling's allegations stem from two main notions. First, Dreiling believes the government could never prove he intended to murder Gibson and Love because he voluntarily called the Coast Guard for assistance and stayed at the scene until they arrived. Dreiling maintains that he knew how to operate the *Billy B* without any assistance from Gibson or Love and that he could have fled the scene if he wanted to, and the government was wrong to suggest otherwise to the jury.

The second theme in Dreiling's motion comes from the seemingly undisputed fact that Dreiling was suffering from a psychotic episode when he attacked Gibson and Love. Dreiling accuses the government of underplaying the severity of this

episode by (1) subjecting him to a faulty mental health evaluation and (2) altering his medical records at trial to remove reference to a prescription for Ativan,[3] which Dreiling thinks would have shown the jury that he had a documented history of psychosis.

From these two ideas, Dreiling advances four grounds for relief in his § 2255 motion. For Ground One, he says the government committed prosecutorial misconduct by (1) intentionally keeping from the jury part of the recording of Dreiling's distress call to the Coast Guard where he requested permission to follow the Coast Guard to shore and (2) altering his medical records at trial to remove reference to a 2012 prescription he received for Ativan. (Doc. 111-1, PAGEID. 1173).

For Ground Two, Dreiling argues that his trial counsel was ineffective for (1) failing to question Coast Guard witnesses about Dreiling's request to follow them inshore and their response to that request (Doc. 111, PAGEID. 1174; Doc. 111-1, PAGEID. 1188); (2) failing to challenge the sufficiency of the mental health evaluation conducted by the government's expert, Dr. Campbell, or to request an alternate mental health evaluation (Doc. 111, PAGEID. 1174; Doc. 111-1, PAGEID. 1188); (3) failing to conduct polygraph examinations of Dreiling, Love, and Gibson (Doc. 111-1, PAGEID. 1187); (4) failing to interview Dreiling's sister and niece before

---

[3] Dreiling refers to being prescribed "Adavan", but the trial transcript reflects that the drug Dreiling had previously been prescribed was Ativan. (Doc. 111-1, PAGEID. 1186; Doc. 79, PAGEID. 626). Ativan is one of the brand names for lorazepam, a benzodiazepine used to relieve symptoms of anxiety. *See* https://www.mayoclinic.org/drugs-supplements/lorazepam-oral-route/side-effects/DRG-20072296?p=1 (last visited January 18, 2024).

trial (Doc. 111-1, PAGEID. 1189); and (5) failing to object to the government giving "several CDs" to the jury after the close of evidence (Doc. 111-1, PAGEID. 1189).

Dreiling's third ground for relief challenges the sufficiency of Dr. Campbell's mental health evaluation, alleging the evaluation was not appropriately "thorough" because Dr. Campbell did not perform the same tests that Dr. Shaffer, the defense's mental health expert, performed. (Doc. 111, PAGEID. 1176; Doc. 111-1, PAGEID. 1189-1190).

Finally, for Ground Four, Dreiling argues—similarly to his argument before the Eleventh Circuit—that he was suffering from a psychotic episode when he attacked Gibson and Love and that the United States failed to prove he had the motive or intent to kill them. (Doc. 111, PAGEID. 1177; Doc. 111-1, PAGEID. 1191-1193). For the reasons explained below, all four of Dreiling's claims fail.

## A. Ground One and Ground Three of Dreiling's motion are procedurally defaulted.

Because procedural default is a threshold issue, *Doorbal v. Dep't of Corr.*, 572 F.3d 1222, 1228 (11th Cir. 2009) (citation omitted), the undersigned first addresses whether any claims in Dreiling's motion are procedurally defaulted. They are. As examined below, Ground One (alleging prosecutorial misconduct) and Ground Three (challenging the sufficiency of Dreiling's mental competence evaluation) are procedurally defaulted because Dreiling failed to raise them on direct appeal.

"[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *McKay*, 657 F.3d at 1196. In the

present case, Dreiling directly appealed his conviction to the Eleventh Circuit; however, his appeal raised only a single issue, *i.e.*, whether the government sufficiently proved he *intended to* commit murder. (Doc. 116, PageID.1252). Dreiling never alleged prosecutorial misconduct (Ground One) and he never challenged the sufficiency of Dr. Campbell's mental competence evaluation (Ground Three), even though both of those claims were available to him at the time. Simply put, the allegations underlying Grounds One and Three were never raised on direct appeal and they are procedurally defaulted here. *Accord Seabrooks*, 32 F.4th at 1383-84 (citing *McKay*, 657 F.3d at 1196) ("If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused."). The Court must next determine whether Dreiling has shown that one of the procedural default exceptions—either cause-and-prejudice or actual innocence/miscarriage of justice—applies to his claims.[4]

1. Dreiling has not established cause and prejudice to excuse the procedural default of Grounds One and Three.

Dreiling might be able to escape the procedural default of Grounds One and Three if he can establish "cause and prejudice". Under this exception, "a § 2255 movant can avoid application of the procedural default bar by 'show[ing] cause for not

---

[4] Dreiling also failed to raise Ground Two (alleging ineffective assistance of counsel) on direct appeal. However, unlike Grounds One and Three, Dreiling's claims of ineffective assistance of counsel fall outside the procedural default rule. *See Massaro*, 538 U.S. at 504. Accordingly, these claims are reviewed on the merits in Section III.C. of this report and recommendation.

raising the claim of error on direct appeal *and* actual prejudice from the alleged error.'" *McKay*, 657 F.3d at 1196 (citation omitted) (emphasis in original).

Dreiling makes no explicit showing of cause and prejudice. However, construing his motion liberally, Dreiling implicitly argues that his appellate counsel's ineffectiveness caused him to procedurally default Grounds One and Three. (Doc. 111, PAGEID. 1173, 1175-76, 1178) (pointing to appellate counsel as the reason that some issues were not raised on appeal).[5]

Ineffective assistance of counsel may satisfy the cause exception to a procedural default. *DiPietro v. United States*, 251 F.App'x 606, 609 (11th Cir. Oct. 15, 2007) (per curiam) (citing *Eagle v. Linahan*, 279 F.3d 926, 937 (11th Cir. 2001)). More specifically, a defendant can avoid the cause requirement by raising a substantive and meritorious issue of ineffective assistance of counsel for failure to assert the claim. *Id*.

As a threshold matter, the undersigned finds that Dreiling's cursory accusation that his attorney failed to raise some issues on appeal is not enough to establish a *substantive* claim for ineffective assistance. More is required than just a generalized allegation that appellate counsel should have done more. And, even if Dreiling had stated a substantive claim for ineffective assistance of appellate counsel, that claim would lack merit because the issues Dreiling says should have appealed also lack

---

[5] Dreiling's motion suggests that Ground Four, like Grounds One through Three, was not raised on direct appeal. (Doc. 111, PAGEID. 1178). This is inaccurate. As analyzed in Section III.B. of this report and recommendation, Ground Four was raised—and rejected—on direct appeal.

merit for the reasons explained in this report and recommendation. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (recognizing that "appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit").

In short, Dreiling has not established cause-and-prejudice, or a substantive claim of ineffective assistance of appellate counsel, that would excuse his procedural default of Grounds One and Three. These claims are ripe for dismissal with prejudice unless Dreiling can establish he is actually innocent, which the undersigned finds he cannot do.

2. Dreiling has not established he qualifies for the actual innocence/miscarriage of justice exception to procedural default.

Even though Dreiling has not shown cause and prejudice, he could still survive the procedural default of Grounds One and Three by proving he is actually innocent of the crime for which he was convicted or that failure to hear Grounds One and Three on the merits would result in a fundamental miscarriage of justice. This requires Dreiling to present new, reliable evidence (not presented at trial) showing that "it is more likely than not that no reasonable juror would have convicted him of the underlying offense." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

Dreiling has not shown "actual innocence" as required for this exception to apply. More specifically, he has not presented any "new evidence" of his innocence, nor has he otherwise shown that "no reasonable juror would have convicted him" of violating 18 U.S.C. § 113(a)(1). He simply argues that the government failed to prove he *intended to* murder Gibson and Love, an argument the Eleventh Circuit Court of

Appeals has already rejected. This is not enough to justify application of the "actual innocence/miscarriage of justice" exception to save his claims.

Before concluding, the undersigned briefly addresses why Grounds One and Three would fail on the merits, even if they were not procedurally defaulted. First, Dreiling's argument that the jury should have heard his entire call to the Coast Guard is unconvincing. Dreiling offers no legal support for his opinion that the jury should have heard the full recording, or that the government acted improperly by playing only select parts. And, in any event, the jury *did* hear testimony from which they could reach the conclusions Dreiling wanted them to reach, *i.e.*, that Dreiling voluntarily called the Coast Guard for assistance, that he knew how to operate the *Billy B* and could have left the scene if he desired to, that he complied with Coast Guard instructions to remain at his then-location, and that he did not want Gibson and Love to die after he attacked them. (Doc. 78, PAGEID. 373-74, 381 (Testimony of David Stone indicating that Dreiling largely complied with instructions to remain at the front of the boat); Doc. 78, PAGEID. 343, 345-47, 359 (Testimony of Noah Gibson acknowledging that Dreiling initiated the call to the Coast Guard); Doc. 79, PAGEID. 518-19 (Testimony of Juan Joy acknowledging that Dreiling could have moved the boat but that he stayed and threw the life raft, water, and positioning beacon, which helped save the victims' lives); Doc. 78, PAGEID. 293 (Testimony from Mark Cole that Dreiling stated he did not want Gibson and Love to die)).

Second, Dreiling's claim that the government fraudulently altered his medical records does not stand up against the trial transcript. According to the transcript, the

parties realized during the prosecution's examination of the defense's medical expert, Dr. Shaffer, that there had been a mistake in how Dreiling's medical records were produced to the prosecution. Namely, the prosecution had received only four pages of a six-page report of Dreiling's 2012 hospitalization, and the prosecution's version omitted reference to a prescription for Zyprexa that Dreiling had been given during that time. The error came to light when the prosecutor, being unaware of the Zyprexa prescription, attempted to question Dr. Shaffer about the absence of any antipsychotic medications. (Doc. 79, PAGEID. 617-18; 629-647; 649-50). There is no evidence the prosecution was responsible for this error. Further, Dreiling cannot show he was prejudiced by it. It was made clear to the jury through additional testimony that Dreiling *had* received a prescription for Zyprexa, an antipsychotic medication, in 2012, and also for Ativan at some point.[6] (Doc. 79, PAGEID. 598, 626, 651-52). Dr. Campbell, the government's expert, also acknowledged that Dreiling had been prescribed Zyprexa, and likely Ativan or Xanax too, and that he had previously been diagnosed with "unspecified psychosis". (Doc. 80, PAGEID. 707-09, 715). Dreiling has not established the right to relief from this minor evidentiary issue.

Ground Three, alleging that Dr. Campbell's evaluation was somehow faulty, likewise fails. Essentially, Dreiling feels that Dr. Campbell's evaluation was insufficient because she did not conduct the same tests as the defense expert, Dr.

---

[6] Again, Dreiling's motion refers to his prescription for Ativan being omitted from his medical records, but the record shows that Zyprexa, not Ativan, was the medication at issue. And, in any event, the jury was aware that Dreiling had received prescriptions for Zyprexa *and* Ativan at some point.

Shaffer. Dreiling has not offered any legal support, nor has the undersigned found any, that invalidates one medical expert's opinion if she conducts different testing from another medical expert. Furthermore, Dr. Campbell testified at trial that she had reviewed Dr. Shaffer's report and "saw that there was a lot of testing that was already done" and that "generally, you don't repeat testing that's already been accomplished." (Doc. 80, PAGEID. 680). Finally, it is important to remember that Dr. Campbell was not the only expert whose testimony the jury heard. They also heard testimony from Dreiling's own expert, Dr. Shaffer, which left them free to consider the reliability of each expert's testing and opinion. The undersigned finds no merit to Dreiling's complaints about Dr. Campbell's evaluation.[7]

To conclude, Grounds One and Three of Dreiling's § 2255 motion are procedurally defaulted, and Dreiling has not established any basis to excuse that default. In addition, Grounds One and Three fail on the merits. The undersigned recommends dismissing these claims with prejudice.

---

[7] Dreiling also briefly takes issue with Dr. Campbell being permitted to remain in the courtroom during other trial witnesses' testimony and with Dr. Campbell prescribing certain medication to him. (Doc. 111-1, PAGEID. 1190-1191). To the extent Dreiling intends for these to be separate claims for relief, they fail. First, as to the sequestration issue, the trial judge and the parties discussed before trial whether Dr. Campbell should be excepted from the sequestration rule, and the trial judge ruled that Dr. Campbell could remain in the courtroom during other witnesses' testimony. (Doc. 78, PAGEID. 243-44). Dreiling has not offered any legal argument or factual support to suggest this ruling was in error, and his generalized objection to Dr. Campbell's presence does not state a claim for relief. As to Dreiling's complaints about medications Dr. Campbell prescribed to him, he likewise has not offered any legal authority or persuasive argument that support a claim for § 2255 relief.

**B. Ground Four is procedurally barred because it was raised and rejected on direct appeal.**

It is well-settled that a prisoner is procedurally barred from raising arguments in a § 2255 motion that he already raised, and the appellate court rejected, on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236 (11th Cir. 2014) (internal citations omitted). On direct appeal, Dreiling raised one issue: Did the evidence at trial sufficiently prove that Dreiling had the specific intent to kill Gibson and Love? (Doc. 116, PAGEID. 1252). The Eleventh Circuit affirmed, finding that, "[v]iewed in the light most favorable to the government," the trial evidence "was sufficient to permit a reasonable factfinder to conclude beyond a reasonable doubt that Dreiling acted with intent to murder Gibson and Love." *See United States v. Dreiling*, 806 F.App'x 888, 891 (11th Cir. 2020).

Ground Four of Dreiling's § 2255 motion raises the same issue he raised on direct appeal, although he now refers to the government failing to prove "motive" instead of "intent". (Doc. 111, PAGEID. 1177). Similar to how he did before the Eleventh Circuit, Dreiling argues here that the United States "did not 'prove' intent to murder or show concrete proof of a motive." (Doc. 111-1, PAGEID. 1193). Comparing Dreiling's argument on direct appeal with his argument here, it is clear that Dreiling's claim has been raised and rejected. His attempt to reassert these claims on collateral review fails. Since Dreiling's insufficiency argument was raised and rejected on direct appeal, it is procedurally barred here. *Petersen v. United States*, Case No. 13-cr-00117-WS-N, 2018 WL 4677915, at *4 (S.D. Ala. May 16, 2018), *report and recommendation adopted*, Case No. 13-cr-0117-WS, 2018 WL 2981169 (S.D. Ala.

June 14, 2018) (citing *Wilson v. United States*, 2017 WL 3225903, at *1 (11th Cir. Feb. 23, 2017), *cert. denied*, 138 S. Ct. 196 (2017)).

## C. Ground Two fails on the merits.

The only ground for relief not procedurally defaulted or procedurally barred is Ground Two, alleging ineffective assistance of counsel (IAC). The Court evaluates this claim using the familiar standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Johnson v. Alabama*, 256 F.3d 1156, 1175–76 (11th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000)) (additional citations and quotation marks omitted). A movant claiming IAC must prove both prongs, and he bears the burden on both of them. *Id*. The test for proving an IAC claim is hard to satisfy, and the Eleventh Circuit has cautioned that "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Id*. (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir.1995) (en banc)).

To establish ineffective performance, a "petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Darden v.*

*Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (quoting *Strickland*, 466 U.S. at 668, 104 S.Ct. at 2065). Lawyers' performance is given considerable deference, and they are afforded "the benefit of the doubt for 'heat of the battle' tactical decisions." *Johnson*, 256 F.3d at 1176 (citing *Mills v. Singletary*, 161 F.3d 1273, 1285-6 (11th Cir.1998); *Waters*, 46 F.3d at 1518 ("The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is ... whether what they did was within the 'wide range of reasonable professional assistance.'" (citation omitted)); *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994) (stating that "[w]hen reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate" (internal quotation marks omitted)). The Eleventh Circuit has explained the inquiry as follows:

> The standard for counsel's performance is reasonableness under prevailing professional norms. The purpose of ineffectiveness review is not to grade counsel's performance.... To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled.... The petitioner must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance.

> Courts must indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. Given the strong presumption in favor of competence, the petitioner's burden of persuasion-though the presumption is not insurmountable-is a heavy one.... [B]ecause counsel's conduct is

presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take....

In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Johnson*, 256 F.3d at 1176-77 (quoting *Chandler v. United States*, 218 F.3d 1305, 1313-1316 (11th Cir. 2000)) (citations and internal quotation marks omitted).

The "prejudice" prong is also difficult to meet. To show prejudice, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Dreiling's five allegations of IAC all fail for the reasons set forth below.

1. <u>Cross-Examination of Coast Guard Officials</u>.

Dreiling first argues that his trial counsel was ineffective for failing to question Coast Guard witnesses about Dreiling's request to follow them inshore and their response to that request (Doc. 111, PAGEID. 1174; Doc. 111-1, PAGEID. 1188). In Dreiling's view, this information was critical to his defense because it would have shown the jury that he was capable of operating the *Billy B* and could have left the scene if he wanted to, but that he chose to stay and facilitate the Coast Guard rendering aid to Gibson and Love. The undersigned does not find legal merit in Dreiling's IAC allegations.

"The decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of a defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (citations omitted). A petitioner cannot establish an IAC claim unless he shows at least "a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial." *Id*. "Ineffective assistance … will not be found merely because 'other testimony might have been elicited from those who testified.'" *Id*. (quoting *Waters*, 46 F.3d at 1514).

Under this reasoning, Dreiling's IAC claim fails. Dreiling has not identified any specific questions that should have been asked of any specific Coast Guard witnesses. Dreiling has not shown that different, or more aggressive, cross-examination of the Coast Guard witnesses would have changed the outcome of his trial. Quite the opposite, as explained above in Section III.A.2., the jury *did* hear evidence from trial witnesses that would allow them to conclude that Dreiling was capable of leaving the scene if he wished to and that he voluntarily called the Coast Guard for assistance, and they still found him guilty. Dreiling's broad attack on his attorney's tactical decisions about how to cross-examine the Coast Guard witnesses does not establish ineffective assistance.

2. Challenge to Dr. Campbell's Mental Health Evaluation.

Dreiling next argues that his trial attorney was ineffective for failing to challenge the sufficiency of the mental health evaluation conducted by the government's expert, Dr. Campbell, or to request an alternate mental health evaluation (Doc. 111, PAGEID. 1174; Doc. 111-1, PAGEID. 1188). The crux of

Dreiling's argument is that Dr. Campbell's evaluation was flawed because she did not conduct the same tests as the defense expert, Dr. Shaffer, and that his attorney was ineffective for failing to object to Dr. Campbell's evaluation at his competency hearing. Dreiling also insinuates his attorney should have objected to certain medication Dr. Campbell prescribed to him. (Doc. 111-1, PAGEID. 1188). These allegations do not establish that Dreiling's attorney's performance was ineffective, or that Dreiling was prejudiced in any way, as required to prove IAC.

Dreiling's claim fails first because he cannot show that trial counsel was ineffective for failing to challenge Dr. Campbell's evaluation or for deciding not to consult a third mental health expert. As already noted above, Dr. Campbell testified at trial that she had reviewed Dr. Shaffer's report and "saw that there was a lot of testing that was already done" and that "generally, you don't repeat testing that's already been accomplished." (Doc. 80, PAGEID. 680). Dreiling has offered no persuasive argument or legal authority suggesting that Dr. Campbell's evaluation was faulty unless she repeated all the tests that Dr. Shaffer conducted. Moreover, trial counsel was not ineffective for failing to engage a third mental health expert when both Dr. Campbell and Dreiling's own expert, Dr. Shaffer, had concluded he was competent to stand trial. (See Doc. 107, PAGEID. 2). The Eleventh Circuit Court of Appeals has concluded that counsel acts reasonably in not seeking further evaluation of a petitioner's mental health under similar circumstances. *Newland v. Hall*, 527 F.3d 1162, 1213 (11th Cir. 2008) (collecting cases).

Dreiling's claim also fails because he cannot show prejudice from trial counsel's conduct with regard to Dr. Campbell's evaluation. Dreiling has not shown that a third mental health evaluation would have turned out differently than the first two, or that a third evaluation—even if it was different from the first two—would have persuaded the Court that Dreiling was incompetent to stand trial. Put simply, Dreiling has not shown deficient performance or prejudice that justify IAC relief on this issue.

3. <u>Failing to Conduct Polygraph Examinations</u>.

Dreiling's next allegation of ineffective assistance comes from his belief that trial counsel should have conducted polygraph examinations of Dreiling, Love, and Gibson. (Doc. 111-1, PAGEID. 1187). This argument fails to prove IAC.

Dreiling's argument fails first because he has not shown trial counsel was deficient for not pursing polygraph examinations. Polygraph tests are only admissible in two circumstances: (1) when both parties stipulate in advance as to the circumstances of the test and the scope of its admissibility or (2) when the test results could be used to corroborate or impeach a witness's testimony. *United States v. Piccinonna*, 885 F.2d 1529, 1536 (11th Cir. 1989). Dreiling's trial counsel did not perform deficiently for failing to obtain evidence that she could reasonably anticipate might not be admissible at trial.

Plus, Dreiling has not shown prejudice. Even if Dreiling's counsel had requested polygraph examinations, there is no indication the government would have stipulated to them. To the contrary, the government has signified it most likely would have opposed any polygraph examinations. (Doc. 116, PAGEID. 1236, n. 10). Nor has

Dreiling shown any polygraph results would have qualified for impeachment or corroboration use, given that the admissibility of these results "is left entirely to the discretion of the trial judge." *Piccinonna*, 885 F.2d at 1536. Dreiling's speculation about what a polygraph examination *may have* shown and that the results *may have* been admissible do not prove IAC. Tellingly, Dreiling has not offered any legal authority to support his argument that polygraph examinations were necessary or admissible under his circumstances.

   4. <u>Failing to Interview Family Members.</u>

   For his next IAC allegation, Dreiling says his trial attorney should have interviewed his sister and niece before trial because his sister "has extensive knowledge of the problems [he has] had in the past with paranoid behavior." (Doc. 111-1, PAGEID. 1189). Dreiling's reasoning is a little unclear, but it seems he wanted his sister and niece to be interviewed before trial and for videos of those interviews to be introduced at trial to prove he had a history of mental illness.

   There are two problems with Dreiling's position. First, "there is no absolute duty to investigate particular facts or a certain line of defense." *Fugate v. Head*, 261 F.3d 1206, 1217 (11th Cir. 2001). Second, "no absolute duty exists to introduce mitigating or character evidence." *Id*. (citations omitted). The question is whether Dreiling has shown that trial counsel's conduct was unreasonable, meaning that "no competent counsel would have taken the action that his counsel did take." *Id*. (citing *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc)).

Dreiling acknowledges his trial attorney knew his sister and niece were potential witnesses and that discussions were had about whether they could attend trial or not. Dreiling also admits his trial attorney obtained video interviews with his family members which the record reflects were used at Dreiling's sentencing hearing. (Doc. 105, PAGEID. 1129-30). Dreiling has not shown that this tactical decision about when to use testimony from his family members was unreasonable.[8]

Further, Dreiling cannot show prejudice from trial counsel's decision not to use his family members as trial witnesses. The core of Dreiling's position is that his sister, and perhaps his niece, would have provided the jury with information about his history of "paranoid behavior". The trial transcript shows that the jury heard from both Dr. Campbell and Dr. Shaffer that Dreiling had a documented history of paranoid behavior, and this testimony was supported by Dreiling's medical records. Dreiling does not identify any *additional* information his sister or niece would have provided in support of his defense. In the undersigned's view, Dreiling was not prejudiced by trial counsel's decision avoid producing cumulative evidence on the issue of Dreiling's mental health. Dreiling's IAC claim on this point fails.

5. Failing to Object to Additional Evidence.

For his final allegation of ineffective assistance, Dreiling argues that his trial attorney should have objected to the government giving "several CDs (as it looked to

---

[8] Furthermore, the record indicates that Dreiling is mistaken about when his sister was interviewed. Dr. Shaffer's report references an interview with Dreiling's sister that occurred on November 3, 2017, which is roughly a year before Dreiling's trial took place. (*See* Doc. 34, PAGEID. 87).

be)" to the jury after the close of evidence (Doc. 111-1, PAGEID. 1189). In the undersigned's view, this cursory accusation is insufficient to satisfy the pleading standards set forth in the § 2255 Rules. *See* Rule 2(b) of the Rules Governing § 2255 Proceedings (requiring motions to specify all grounds for relief and state the facts supporting each ground); *see also Aron v. United States*, 291 F.3d 708, 715 n. 6 (11th Cir. 2002) (noting that a petitioner must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief"). Furthermore, the undersigned has reviewed the trial transcript and does not find any support for Dreiling's suspicion that the jury was given anything other than the jury instructions, verdict form, and admissible evidence. Dreiling has not established that his trial counsel was ineffective for failing to object to this seemingly proper evidence being given to the jury, or that he was prejudiced by any such information being given to the jury.

## IV.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rule 11(a) of the Rules Governing § 2255 Proceedings. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). "A prisoner seeking a COA must prove something more than the absence of frivolity or the

existence of mere good faith on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (quotations omitted). However, "a COA does not require a showing that the appeal will succeed." *Id.* at 337, 123 S.Ct. 1029. Upon due consideration, the undersigned **RECOMMENDS** Dreiling be **DENIED** a Certificate of Appealability in conjunction with the denial of his present § 2255 motion, as reasonable jurists would not debate whether his § 2255 motion should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further.[9]

## V. Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3).

A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States*, 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester*, 939 F.2d

---

[9] If the Court adopts the undersigned's recommendation against issuing a COA, Dreiling "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts.

924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 515 (11th Cir. 1991). *Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished). Having considered the issues raised as set forth above, the undersigned **RECOMMENDS** the Court **CERTIFY** that any appeal by Dreiling of the denial of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal in forma pauperis.[10]

## VI. Conclusion

Upon consideration, and for the reasons stated herein, the undersigned finds Dreiling's claims are procedurally defaulted, procedurally barred, and/or they fail on the merits. Dreiling has not provided any basis to warrant expansion of the record or an evidentiary hearing under Rules 7 and 8 of the § 2255 Rules. Accordingly, the undersigned **RECOMMENDS** Grounds One, Three and Four of Dreiling's § 2255 motion be **DISMISSED** with prejudice and that Ground Two be **DENIED** on the merits. Further, the undersigned **RECOMMENDS** Dreiling be **DENIED** a Certificate of Appealability and the Court **CERTIFY** any appeal of the present denial of his § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal in forma pauperis.

---

[10] Dreiling may file a motion to proceed on appeal in forma pauperis with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Cases in the United States District Courts; S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **26th** day of **January 2024**.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**